THE STATE v. JAMES R. NUGENT ET AL.

Argued June 2, 1908—Decided November 9, 1908.

In an indictment charging a conspiracy to procure illegally and fraudulently votes at a primary election, the allegation was that such primary election was held by a "certain political party of this state, to wit, the Democratic party." *Held*, that the indictment is defective in failing to define the political party in the language of the statute, as one which had at an election for members of the general assembly next preceding the holding of the primary, polled for members to the general assembly at least five per cent. of the whole number of votes cast in the district in which and for which the nominations were made.

On *certiorari.*

Before Justices REED, BERGEN and VOORHEES.

For the state, *Louis Hood* and *Wilbur Mott,* prosecutor of the pleas.

For the defendants, *Samuel Kalisch.*

The opinion of the court was delivered by

VOORHEES, J. This writ of *certiorari* brings under review an indictment found against James R. Nugent, Philip Loeser, Joseph J. Kenny, Abraham Schwarz, John Shannon, John Rogers, Robert E. McGuire, Frank Corbitt and Otto Filliger, by the grand jury of the county of Essex, charging a conspiracy to procure illegally and fraudulently votes at a primary election held at Newark by a political party on the 10th

day of September, 1907, for the choice of delegates to a state, county and city convention.

The basis of the indictment is sections 214 and 215 of "An act to regulate elections." *Pamph. L.* 1898, *p.* 330, under subdivision "Primary Meetings."

By section 214 it is enacted that "no person not at the time entitled to vote by the laws of this state, at the special, general and local elections held in this state, shall vote at any primary meeting or caucus called or held by any political party or political organization of this state for the nomination or selection of persons to be voted for at any such elections, nor shall such person vote unless he is a legal resident of the political division in and for which such primary meeting or caucus is held."

By the next section it is made a misdemeanor if any person not entitled to vote as aforesaid shall offer to vote at any such primary meeting or if any person or persons shall counsel or procure anyone, knowing or having reason to believe that such person is not entitled to vote, to vote thereat. It is likewise made a misdemeanor if any person having votes at such primary shall vote or offer to vote at a primary held by any other political party.

A supplementary act was passed in 1903. *Pamph. L., p.* 603. The first section of this supplement enacts: "In addition to the elections for filling public offices that now are, or hereafter may be, held under the laws of this state, there shall also be held primary elections for the selection of delegates to conventions of political parties and for the nomination of candidates for certain public offices as hereinafter provided," and it then declares that certain elective officers required to be voted for by the voters of more than one ward or township shall be nominated at a convention of delegates chosen "at primary elections held pursuant to this act," and that all candidates to be voted for by the members of a single ward or township shall be nominated directly.

The second section provides that only such persons as shall be registered for the ensuing general election shall be qualified to vote.

The third section enacts: "A political party within the meaning of this act shall be a political party which at the election for members of the general assembly next preceding the holding of any primary election held pursuant to this act polled for members of the general assembly at least five per centum of the total vote cast in the territorial district or division in and for which the nominations are made or delegates are chosen."

The charge in the indictment is that on September 10th, 1907, there was held in each election district of the city of Newark "a primary meeting and election by a certain political party of this state, to wit, the Democratic party, duly and in due form of law, and under and pursuant to the laws of the State of New Jersey," and reciting that the city of Newark was then a city having by the next preceding state census a population exceeding thirty thousand, mentioning the districts at which the primary meeting and election was held, and the convention for which delegates were to be voted and the offices for which candidates were to be nominated.

The indictment then charges that the defendants "wickedly, devising and intending at said primary meeting and election of the said certain political party of the State of New Jersey, to wit, the Democratic party, to be held on the tenth day of September, in the year nineteen hundred and seven, to procure divers persons known to them not to be qualified voters, to vote thereat, and to procure divers persons to vote thereat in more than one election district, and to procure divers persons to vote thereat upon names other than their own, on the said tenth day of September, in the year of our Lord one thousand nine hundred and seven, with force and arms. at the said city of Newark, in the county of Essex aforesaid, and within the jurisdiction of this court, did unlawfully and wilfully combine, unite, confederate, conspire and bind themselves by agreement to unlawfully, wilfully and corruptly procure Joseph Torrello to vote at the primary meeting and election aforesaid, to be held as aforesaid, in the first election district of the fourth ward of the city of Newark aforesaid, in the county aforesaid, and before the board of registry and

election of the said election district, constituted and organized according to law, and sitting at the place within the said election district provided for by law, well knowing the said Joseph Torrello not to be a qualified voter in the said election district at the primary meeting and election aforesaid, to be held as aforesaid and not to be by law entitled to vote therein and thereat, by reason that he did not legally reside within the said election district," and continuing, charging certain other overt acts done in pursuance of said conspiracy, and then charges "that in pursuance of and according to said conspiracy, combination, confederacy and agreement between themselves had as aforesaid, and to enable 'the said non-qualified voters to vote at said primary election, the defendants   *   *   *'   did unlawfully, wilfully and corruptly counsel, aid, advise, assist and abet the said Joseph Torrello in voting in the name of Joseph White,   *   *   * by then and there unlawfully, wilfully and corruptly counseling, aiding, advising, assisting and abetting the said Joseph Torrello to appear in person before the board of registry and election of the election district aforesaid, and to knowingly and falsely pretend and represent that his name was Joseph White,   *   *   *   and that he, the said Joseph Torrello, in the name of Joseph White, was entitled to the right of suffrage in the election district aforesaid at the primary meeting and election aforesaid." And further charges that thereby he was falsely registered under the name of Joseph White, and that after such registry he "did give in and cast his vote at the primary meeting and election aforesaid in the name of Joseph White, well knowing himself not to be a resident and qualified voter of the said election district at the said primary meeting."

The primary law is concerned simply with providing a method for the selection of persons to be voted for at a public election. This was unknown to the common law, and rests entirely upon the statute by which it was created and defined. *State* v. *Woodruff, 39 Vroom* 89.

This indictment fails to state that there was held a primary meeting by a party which had at an election for members of

the general assembly next preceding the holding of the primary, polled for members of the general assembly at least five per cent. of the whole number of votes cast in the district in which and for which nominations were made.

It does state that such primary election was held by a "certain political party of this state, to wit, the Democratic party." This is uncertain and equivocal. It may mean a political party such as is popularly known as the Democratic party, or it may mean a definite political organization such as the act concerning elections defines.

This at once presents a situation where it is essential in an indictment that the court and the defendant should be informed which meaning is to be attributed to the phrase or word used. We think, therefore, that the indictment is defective in failing to define the political party in the language of the statute as one which had at an election for members of the general assembly next preceding the holding of the primary, polled for members to the general assembly at least five per cent. of the whole number of votes cast in the district in which and for which the nominations were made.

The crime charged is a purely statutory one, and the indictment should charge with certainty and precision all matters in which the illegality consists where the act *per se* is not unlawful. To vote at a primary election held by a political party or organization not within the terms of the act would manifestly not be illegal, for such party could not hold an effective primary. The charge must go further and set out that the primary was held by a political organization defined by the statute. The statutory offence is voting at a primary held by a political party which casts at least five per cent. of the total vote at the next previous election for members of the general assembly, and under authority of *Roberson* v. *Lambertville,* 9 *Vroom* 69, the description of the crime must in all respects correspond with the statute.

Nor is this view overcome by the argument advanced by the state that the court is informed of the fact that the Democratic party had, at an election preceding the primary, polled more than five per cent. of all the votes cast, because by sec-

tion 108 of the act of 1898, the board of county canvassers is charged with making two statements of the result of the election, and by section 110 such board must deliver one of these statements to the secretary of state, who is charged with filing the same, whereby it will be apparent whether or not the Democratic party was qualified to hold a primary, the court taking judicial notice of the archives of the secretary of state. Upon turning to section 108 it is apparent from the form of certificate there given that the political party of the candidates voted for is nowhere mentioned or required to be mentioned in such statement.

But if it be conceded that the court would take judicial notice of such return as a matter of proof, assuming that such return did contain the political faith of the persons certified to have been voted for, yet it does not follow that the indictment should not set forth that the political party was of the constitution prescribed by the statute.

For this reason, therefore, the indictment should be quashed. This conclusion renders it unnecessary to examine the other points made by counsel for the defendants.